**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Edward Jeff Price | ) | |
| | ) | |
| Plaintiff, | ) | No. 15 C 7541 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| Seterus, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER AND OPINION

Plaintiff Edward Jeff Price brought this action against Defendant Seterus, Inc. ("Seterus") alleging that Seterus violated the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. § 1692, the Bankruptcy Discharge Injunction pursuant to 11 U.S.C. § 524, and the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") pursuant to 815 ILCS 505/1 *et seq*. Seterus now moves to dismiss each of Price's claims in their entirety. For the reasons set forth below, Seterus's Motion to Dismiss is granted with relation to the § 1692(g) claim in Count I with prejudice and the entirety of Counts II and III without prejudice. The Motion is denied as it relates to the remainder of Count I. (Dkt. No. 13.)

## BACKGROUND

The Court takes the following allegations from the Complaint and treats them as true for the purposes of the Defendant's motion. *See Gillard v. Proven Methods Seminars, LLC*, 388 F. App'x 549, 549-550 (7th Cir. 2010).

On February 9, 2009, Price obtained a mortgage loan from GMAC Mortgage ("GMAC") secured by a property located at 2240 Misty Creek Trail in Bolingbrook, Illinois 60490 ("subject property"). (Dkt. No. 1 at ¶¶ 5, 7.) Price has owned and resided at the subject property at all relevant times, including at current. (*Id.* at ¶ 5.) On February 28, 2013, Price filed a Chapter 13

Bankruptcy Petition in the United States Bankruptcy Court, Northern District of Illinois, Case Number 13-07853. (*Id*. at ¶ 8.) On March 1, 2013, the Bankruptcy Noticing Center ("BNC") served GMAC with a notice of Plaintiff's bankruptcy filing and original plan. (*Id*. at ¶ 10.) At some point after the filing and while the subject loan was in default, GMAC transferred the subject loan to Ocwen Loan Servicing, LLC ("Ocwen"). (*Id* at ¶ 12.)

On May 24, 2013, Price filed a modified Chapter 13 plan ("Modified Plan") which provided: "Debtor is surrendering the [subject property] to GMAC Mortgage and Ocwen Loan Servicing in full satisfaction of their claims." (*Id*. at ¶¶ 13, 14.) The Bankruptcy Judge confirmed the Modified Plan that same day. (*Id*. at ¶ 15.) On September 24, 2013, the Bankruptcy Court entered an Order of Discharge in Price's case of all dischargeable debts, including the subject debt. (*Id*. at ¶ 17.) The Order provides that "[t]he discharge prohibits any attempt to collect from the debtor a debt that has been discharged. For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor...." (*Id*. at ¶ 18; Dkt. No. 1-5 at 2.) BNC served Ocwen with the Order on September 26, 2013. (Dkt. No. 1-5 at 4.) On November 15, 2013, Price's bankruptcy case was closed. (*Id*. at ¶ 21.) On April 15, 2015, Ocwen sent Price a Notice of Servicing Transfer stating that the mortgage loan was being transferred to Seterus effective May 1, 2015. (*Id*. at ¶ 23.)

Price alleges that Seterus sought to collect the subject debt despite the discharge through three separate communications. (*Id*. at ¶ 25.) First, on or around May 1, 2015, Seterus sent Price a Payment Schedule Letter, attaching a payment coupon, indicating that Price had to pay $1,613.17 for three subsequent months, beginning on May 1, 2015. (*Id*. at ¶ 27.) Second, on May 14, 2015, Seterus sent Price a Summary of Total Debt Composition which provided that the

total amount of Price's debt was $330,167.19. (*Id*. at ¶ 28.) Third, on July 16, 2015, Price received a letter, with a payment coupon attached, from Seterus which stated: "As of July 16, 2015, you are delinquent on your mortgage loan by 806 days. Failure to bring your loan-up-to-date may result in fees, foreclosure, and loss of your home…The total amount due to reinstate the loan as of July 16, 2015 is $48,998.25. (*Id*. at ¶ 29.)

## LEGAL STANDARD

A complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face to survive a 12(b)(6) challenge. *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).* A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendant is liable for the harm. *Id.* The complaint should be dismissed only if the plaintiffs would not be entitled to relief under any set of facts that could be proved consistent with the allegations. *See Visiting Nurses Ass'n of Southwestern Indiana, Inc. v. Shalala,* 213 F.3d 352, 354 (7th Cir. 2000). In making the plausibility determination, the Court relies on its "judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal,* 129 S.Ct. At 1950). For purposes of this motion, this Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *See Yeftich v. Navistar, Inc.,* 722 F.3d 911, 915 (7th Cir. 2013).

## DISCUSSION

As an initial point, Seterus seems to contend that the Modified Plan, and by association its confirmation, are invalid because (1) the Modified Plan was filed and confirmed on the same day, thus robbing Seterus of an opportunity to object in violation of its due process rights, and (2) the Modified Plan does not contain any provision to transfer title and does not provide any

3

indication of the value of the property. (*See* Dkt. No. 14 at 3-4; Dkt. No. 27 at 2-3.) The Court declines to comment on the strength of these contentions particularly because Seterus has not previously[1] and does not now appeal the Bankruptcy Court's Order of Confirmation. As such, these issues are not before the Court and consideration of them would undermine the finality of the bankruptcy confirmation. *See Adair v. Sherman*, 230 F.3d 890, 895 (7th Cir. 2000) ("Allowing collateral attacks of the type brought by Mr. Adair would give debtors an incentive to refrain from objecting in the bankruptcy proceeding and would thereby destroy the finality that bankruptcy confirmation is intended to provide."). In terms of Seterus's due process contention specifically, while it is "not questionable that a confirmation order entered in violation of due process notice requirements is void," as Seterus alleges is the case here, it is equally the case that "Federal Rule of Civil Procedure 60(b)(4) is proper vehicle to provide relief from such an order." *See, e.g., In re Erdmann,* 446 B.R. 861, 865-66 (Bankr. N.D. Ill. 2011). As Seterus has not filed a Rule 60(b) motion here, the Court declines to delve into its due process contentions.[2] As such, for the purposes of this proceeding, the Modified Plan and its confirmation are held to be valid. *Adair*, 230 F.3d at 890 ("As a general rule, a failure to raise an objection at the bankruptcy plan confirmation hearing, or to appeal from the order of confirmation, should preclude attack on the plan or any provision therein as illegal in a subsequent proceeding.").

Price sets forth three Counts in his Complaint. Count I alleges that Seterus violated various sections of the FDCPA. (Dkt. No. 1 at 5-7.) Count II alleges that Seterus violated the

---

[1] Seterus's predecessor in interest similarly failed to object to or appeal the confirmation of the Modified Plan.
[2] Even if Seterus had filed a Rule 60(b) motion, the motion would be untimely. "A motion under Rule 60(b) must be made within a reasonable time—and… no more than a year after the entry of the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c)(1). As such, Seterus's "only other procedural remedy" would be file a new or independent action to set aside a judgment upon [the allegedly violated] principles." *Id*. (Advisory Committee Notes).

Discharge Injunction. (*Id.* at 7-9.) Finally, Count III alleges that Seterus violated the ICFA. (*Id.* at 9-11.) Seterus moves to dismiss all Counts.

I.   **Count I – FDCPA Claims**

To state a claim under the FDCPA, Price must allege that (1) Seterus qualifies as a debt collector as defined in § 1692a(6), (2) the actions of which Price complains were taken in connection with the collection of any debt and (3) the actions violated one of the FDCPA's substantive provisions. *See Gburek v. Litton Loan Servicing LP,* 614 F.3d 380, 384 (7th Cir. 2010); *see also, e.g., Kabir v. Freedman Anselmo Lindberg LLC*, No. 14 C 1131, 2015 WL 4730053, at *2 (N.D. Ill. Aug. 10, 2015). In deciding whether collection letters violate the FDCPA, courts must view them "through the eyes of the unsophisticated consumer." *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 645 (7th Cir. 2009) (internal quotations omitted). "The unsophisticated consumer isn't a dimwit. She may be uninformed, naive, [and] trusting but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Id.* (internal quotations and citations omitted).

Price alleges that Seterus violated "§§ 1692e(2), e(10), f, f(1), and (g) through its debt collection efforts on a debt discharged in bankruptcy."[3] (Dkt. No. 1 at 6.) Seterus, in its Motion to Dismiss, does not dispute that it qualifies as a debt collector. Rather, Seterus contends that its actions were not taken in relation to collecting on a debt and that it did not violate the FDCPA's substantive provisions for a number of reasons.

1.   Surrender of Subject Property

First, Seterus argues that because Price has not yet surrendered the Subject Property in accordance with the Modified Plan, its actions to continue to collect subject to the lien do not run

---

[3] For §§ 1692e and 1692f, the parties did not brief each subsection but addressed the FDCPA disputes more generally. As such, the Court considers each argument as it relates to both subsections at once.

afoul of the FDCPA. (*See* Dkt. No. 14 at 3-4; Dkt. No. 27 at 2-4.) As a preliminary point, there is no precise delineation of what surrender requires in the bankruptcy context. *See, e.g., In re Ware*, 533 B.R. 701, 705 (Bankr. N.D. Ill. 2015) (stating that "[n]either section 1325 specifically nor the Bankruptcy Code as a whole provides a definition, however, of the word 'surrender,'" followed by substantial analysis of competing interpretations). In any event, the Court need not decide this issue at this point in the proceeding as Seterus fails to provide, and the Court has not found, any authority supporting its contention that it may continue to collect payments simply because surrender has not *yet* occurred. The outcome may be different if it was clear that Price had no intention of ever surrendering the Subject Property. However, taking the non-movant's factual allegations as true, Price has clearly indicated that he intends to surrender the Subject Property, but has failed to do so because he "cannot forcefully or unilaterally transfer title to the mortgagee without its consent."[4] (Dkt. No. 22 at 5.) Because Seterus fails to provide authority indicating that it may continue to collect payments in this situation, the Court need not (and declines to) address whether or not surrender has properly occurred.

2. Communications not intended to collect debt

Second, Seterus argues that its communications to Price were not intended to collect on any debt. While there is "no bright line test to determine whether a communication is made in connection with the collection of a debt…courts weigh several factors to determine whether a communication is made in connection with the collection of a debt. Specifically, the Court must weigh the presence or absence of a demand for payment, the nature of the parties' relationship, and the purpose and context of the communications." *See, e.g., Preuher v. Seterus, LLC*, No. 14

---

[4] The Court acknowledges Seterus's argument that Price has failed to indicate *why* he has been unable to physically surrender the Subject Property or why doing so is infeasible. (Dkt. No. 27 at 3-4.) However, given that Price has repeatedly stated he will surrender the subject property, the Court, at this stage of the proceeding, reasonably infers that surrender has been infeasible thus far. *Yeftich*, 722 F.3d at 915.

6

C 6140, 2014 WL 7005095, at *2 (N.D. Ill. Dec. 11, 2014) (citing *Gburek*, 614 F.3d at 385). At the motion to dismiss stage, the Court "need only determine whether [Price's] allegations – including the contents of the letters [he] attached to [his] complaint – are sufficient to survive [Seterus's] motion to dismiss." *Gburek*, 614 F.3d at 386. Here, Price argues that the Payment Schedule Letter sent on May 1, 2015, the May 14, 2015 letter including a Summary of Total Debt Composition, and the July 16, 2015 letter regarding the outstanding amount on the mortgage loan all violate the FDCPA. Seterus counters that the Payment Schedule Letter was part of a larger and innocuous Welcome Packet that included a disclaimer notice[5] indicating that the letter was not being sent to collect a debt, and that the three letters were sent in compliance with federal law and also included the same notice.

The Court holds that Price has alleged sufficient facts at this stage of the proceeding to show that, based on the totality of the circumstances, it is plausible that the communications were intended to collect a debt. Considering the three aforementioned factors, the presence of detachable payment coupons, *see, e.g.,* Dkt. No. 14-3, the parties' debtor-debtee relationship, and the context of the letters, each of which refer to a specific amount due and when such an amount would be due by[6], support a finding that the communications could plausibly have been meant to collect a debt. *See, e.g., Shelley v. Ocwen Loan Servicing, LLC*, No. 1:13-CV-506-RLY-DKL, 2013 WL 4584649, at *5 (S.D. Ind. Aug. 28, 2013) ("As an initial matter, the Notice Regarding Debt Collection on the second page of the Letter is not controlling"); *Thompson v. BAC Home Loans Serviceing*, L.P., No. 2:09-CV-311-TS, 2010 WL 1286747, at *5 (N.D. Ind. Mar. 26,

---

[5] The notice stated: "IF YOU RECEIVE OR HAVE RECEIVED A DISCHARGE OF THIS DEBT THAT IS NOT REAFFIRMED IN A BANKRUPTCY PROCEEDING, YOU WILL NOT BE PERSONALLY RESPONSIBLE FOR THE DEBT." (Dkt. No. 14-2 at 2.)

[6] For example, the language in the Payment Schedule Letter sent on May 1, 2015, explicitly states "[b]elow is your payment schedule for the next three months" and then provides a chart outlining the payment due dates, the total amount due, and the location where payments should be sent. (Dkt. No. 14-2 at 8.)

2010) (granting motion to dismiss because, unlike here, "the Notice itself did not provide terms of payment or deadlines…."). Moreover, the relationship between the parties, based on the facts alleged, is only that Seterus has ownership of Price's allegedly defaulted debt. *See Ruth v. Triumph Partnerships*, 577 F.3d 790, 799 (7th Cir. 2009) (holding as a matter of law that the letter and notice were sent in connection with attempting to collect a debt based on, in part, the fact that "[t]he only relationship the defendants had with the plaintiffs arose out of Triumph Partnerships' ownership of the plaintiffs' defaulted debt.").

Seterus's position that its many disclaimers on the documentation make it "unmistakable that the purpose of the communication was 'not an attempt to collect a debt'" is unavailing. (Dkt. No. 14 at 11.) This Court, consistent with the Court in *Derrick Tate v. Ocwen Loan Servicing, LLC*, No. 14-cv-05528 (N.D. Ill. 2015), declines to hold, as a matter of law, that the bankruptcy disclaimer this case, which was included in boilerplate format, is sufficient such that "an unsophisticated consumer would understand it as negating the overall thrust" of the communications. (*Id.*, Dkt. No. 21 at 3 (stating: "While I agree that the 'bankruptcy disclaimer' itself uses straightforward language, I am not persuaded by its 'prominent' placement, nor do I conclude, as a matter of law, that an unsophisticated consumer would understand it as negating the overall thrust of the account statement.").)

3. Communications required by Federal Law

Third, Seterus argues that because each of the letters included information that is required by federal law, it cannot be held to violate the FDCPA.[7] (*See* Dkt. No. 27 at 9.) The Court addresses each letter in turn. Turning first to May 1, 2015 correspondence, Seterus contends that its sending the letter cannot run afoul of FDCPA because it was required to send both the notice

---

[7] Seterus contends that Price did not dispute its position that federal law required the sending of the three letters. (Dkt. No. 27 at 9.) However, Price did, albeit briefly, address Seterus's positions in its briefing. (*See* Dkt. No. 22 at 12.) As such, the Court does not find that Price waived this contention.

8

of servicing transfer and debt validation notice which were included in the Welcome Packet. While it may be the case that Seterus was indeed required to send both of those pieces of correspondence, the statutory language does not require Seterus to also send additional paperwork in the Welcome Packet, such as the objected to Payment Schedule Letter and payment coupon, along with the notices. *See, e.g., Lara v. Specialized Loan Servicing, LLC*, No. 1:12-CV-24405-UU, 2013 WL 4804387, at *1 (S.D. Fla. Sept. 6, 2013) (finding "Welcome Letter objectively misleading…in that it misrepresents the legal status of Plaintiff's debt by, *inter alia*, including a mail-in payment coupon with a payment amount and payment instructions."). While Seterus may in fact comply with federal law in regards to the two notices included in the Welcome Packet, this contention does not reach the crux of the issue at bar, *i.e.* the propriety of sending the Payment Schedule Letter. (*See* Dkt. No. 14-2 at 8; Dkt. No. 1-8.) Seterus does not make any meaningful counterargument on whether the Payment Schedule Letter itself was required by federal law. (Dkt. No. 14 at 10-11.)

In regards to the May 14, 2015 debt validation notice letter, however, the Court finds that the notice was sent in accordance with the FDCPA. (*See* Dkt. No. 1-9). That letter provided information as required by 15 U.S.C. § 1692(g), and did not otherwise "demand any payment whatsoever," rather simply informing Seterus about the status of their account. *See Bailey v. Sec. Nat. Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998). Finally, the July 16, 2015 Periodic Statement suffers from the same issue as the Welcome Letter (and associated Payment Schedule Letter). While 12 C.F.R. § 1026.41 does require a number of different disclosures, including amount due, explanation of that amount, past payment background, etc., *see* § 1026.41(d), the section does require that a payment coupon also be included as part of the disclosures. (*See* Dkt. No. 1-9 at 2.) Seterus again does not cite to any authority regarding the

9

propriety of the payment coupon being included in the letter. (*See* Dkt. No. 14 at 12 (Seterus only stating that "[t]he requirements for the periodic statement included, among other things, the payment due date, the amount due, and the amount of any late payment fee.").

Given that the totality of the circumstances indicate that Price, as an objective, unsophisticated consumer could have plausibly believed that the letters were being sent to collect on a debt, and the fact that aspects of at least two of the letters are not required by federal law, Price has presented sufficient facts to support his aspect of his claim under the FDCPA.

4. § 1692(g) claim

Price also contends that Seterus violated 15 U.S.C. § 1692(g) when it failed to send "Plaintiff the required 30-day validation notice within five days of the initial communication, which was on or around May 1, 2015." (Dkt. No. 1 at ¶ 49.) Seterus moves to dismiss on the grounds that Price could have only received the Payment Letter Schedule on May 13, 2015 as part of the complete Welcome Packet, and that because Price received the debt validation notice on May 14, 2015, Seterus cannot be found to run afoul of § 1692(g). (Dkt. No. 14 at 13-14.)

The Court grants Seterus's motion to dismiss this aspect of Price's claim. Upon reviewing the entire Welcome Packet, of which the complained about Payment Letter is part, it is clear that the Packet, and therefore the letter, were sent on May 13, 2015.[8] (*See* Dkt. No. 14-2.) This finding is bolstered by the fact that Price, rather than raise any meaningful dispute on the issue, simply states that he has "pled enough facts to put Seterus on notice with regard to [his] §1692 claim." (Dkt. No. 22 at 13.) However, the complete facts before this Court, *i.e.* when the Welcome Packet was sent and that the Payment Letter was part of that Packet, do not support

---

[8] The Court considers the entire Welcome Packet pursuant to the incorporation-by-reference doctrine which "provides that if a plaintiff mentions a document in his complaint, the defendant may then submit the document to the court without converting defendant's 12(b)(6) motion to a motion for summary judgment." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

any plausible claim that Seterus was untimely in sending the validation notice. Given that the incorporation-by-reference doctrine was designed for exactly this kind of situation, the Court grants this aspect of Seterus's motion to dismiss with prejudice. *See Brownmark*, 682 F.3d at 690 ("The doctrine prevents a plaintiff from 'evad[ing] dismissal under Rule 12(b)(6) simply by failing to attach to his complaint a document that prove[s] his claim has no merit.'") (citing *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002)).

## II. Count II – Discharge Injunction

Price further alleges that Seterus violated the discharge injunction, under 11 U.S.C. § 524(a)(2), when it willfully attempted to collect on the subject debt despite having actual notice of the discharge. (Dkt. No. 1 at 7-9.) Seterus moves to dismiss on two grounds: (1) that the claim should be brought in bankruptcy court and (2) that, in any event, Seterus did not violate the discharge injunction because it was entitled to seek periodic payments.

Turning to the first ground for dismissal, while District Courts have "original but not exclusive jurisdiction in all civil proceedings arising under title 11, or arising in or related to case under title 11," 28 U.S.C. § 1334(b), District Courts "may provide that any [such cases] shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a). In this District, Local Rule 40.3.1 provides that all such cases "are referred to bankruptcy judges of this District." N.D. Ill. L.R. 40.3.1(a). While this Court is not required to refer a case or a specific claim to a bankruptcy court, it may do so in the interest of judicial resources or so as to employ the bankruptcy judge's expertise in area. *See, e.g., Cox v. Zale Delaware, Inc.*, No. 97 C 4464, 1998 WL 397841, at \*5 (N.D. Ill. July 13, 1998) (referring case to bankruptcy court where the district court believed that it would be a "better use of our district's ever-more scarce judicial resources"

11

and that "[t]he bankruptcy court's expertise makes it a better forum to initially adjudicate this claim.").

The Court holds that Count II should be initially brought in bankruptcy court. In this Count specifically and in this case in general, the parties dispute a multitude of issues that fall specifically within the expertise of the bankruptcy court. While the Court may indeed resolve both resolve the issues at bar, the Court find such issues "are more properly resolved in the first instance by the capable and experienced bankruptcy" court. *Id*. at \*6. However, rather than directly refer these claims to the Bankruptcy Court, this Court dismisses these claims without prejudice and "leaves it to [Price] to decide whether to reallege these claims in the appropriate Bankruptcy Court forum." *See, e.g., Kim v. Fayazi*, No. 96 C 6966, 1998 WL 729753, at \*3 (N.D. Ill. Oct. 14, 1998). The Court's rationale behind this decision is, as Price himself contends, that it may be inefficient for the parties to have two ongoing claims in two separate Courts.[9] (Dkt. No. 22 at 6-7.) In addition, Price does not dispute Seterus's position that the "*only* remedy Section 524" is to ask the bankruptcy judge to hold the other party in contempt. *See, e.g., Dore v. Five Lakes Agency, Inc.*, No. 14 CV 6515, 2015 WL 4113203, at \*2 (N.D. Ill. July 8, 2015). Given that "failure to respond to an argument…results in waiver," *see Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010), Price's non-response further bolsters the Court's holding.

As such, and without expressing any opinion otherwise on this issue, the Court dismisses Count II without prejudice.

### III. Count III – Illinois Consumer Fraud Act

---

[9] Price's only counterargument on this issue is that this Court should adjudicate this Count on the basis of efficiency. (See Dkt. No. 22 at 6-8 (conceding that other courts have "dismissed claims for violations of the discharge injunction because they believed the bankruptcy court to be better equipped for adjudicating the claims.").) However, as explained above, the Court holds that it would be more efficient for the bankruptcy court, if Price chooses to reallege its claim there, to address this Count in the first instance.

Finally, Price contends that Seterus violated the ICFA by unfairly and deceptively inducing Price to make payments on an allegedly uncollectible debt. (*See* Dkt. No. 1 at 9-11.) Seterus moves to dismiss on three grounds: (1) that the communications that were sent were required by federal law, (2) that Price fails to allege that he suffered any actual pecuniary losses as a result of the communications, and (3) that Price does not sufficiently allege that he was deceived by the communications. (Dkt. No. 14 at 14-15.)

The ICFA is a "regulatory and remedial statute intended to protect consumers, borrowers, and business persons against fraud, unfair methods of competition, and other unfair and deceptive business practices." *See, e.g., Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 825-26 (N.D. Ill. 2013) (citing *Robinson v. Toyota Motor Credit Corp.,* 201 Ill.2d 403, 266 Ill.Dec. 879, 775 N.E.2d 951, 960 (2002)). "An ICFA deceptive conduct claim requires '(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception.'" *See, e.g., id*. at 827 (citing *De Bouse v. Bayer,* 235 Ill.2d 544, 337 Ill.Dec. 186, 922 N.E.2d 309, 313 (2009)); *see also Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).

Having already decided that not all of the communications were required by federal law *supra*, the Court turns to the second dispute, *i.e.* whether Price sufficiently alleges that he suffered actual damage. "To prove damages, a 'plaintiff must allege that she has been harmed in a concrete, ascertainable way.'" *See, e.g., Jamison v. Summer Infant (USA), Inc.*, 778 F. Supp. 2d 900, 911 (N.D. Ill. 2011) (citing *Frye v. L'Oreal USA, Inc.* 583 F.Supp.2d 954, 957 (N.D. Ill. 2008)). In opposing the motion to dismiss, Price argues that "he suffered emotional distress, was harassed, expended time and incurred costs consulting with his attorneys as a result of Seterus's

deceptive acts." (Dkt. No. 22 at 13.) He does not, however, contend that he actually paid any amount on the discharged debt. Neither attorney's fees nor emotional damages constitute actual damages under ICFA. *See, e.g., Thrasher-Lyon v. Illinois Farmers Ins. Co.*, 861 F. Supp. 2d 898, 913 (N.D. Ill. 2012) ("emotional damages do not constitute actual damages under the ICFA."); *Garcia v. Receivables Performance Mgmt., LLC*, No. 14 C 5367, 2014 WL 5543885, at *2 (N.D. Ill. Nov. 3, 2014) ("Rather, [attorney's fees] are recoverable separately pursuant to Section 10a(c) of the Act, which gives courts discretion to grant reasonable attorney's fees and costs to the prevailing party. 815 Ill. Comp. Stat. 505/10a(c). Since the statute differentiates between attorney's fees and actual damages, it is clear that Garcia must allege more than just pecuniary losses relating to meetings he had with his attorneys. Accordingly, his ICFA claim must be dismissed.").

Although Price cites to *Thompson v. CACH, LLC*, No. 14 CV 0313, 2014 WL 5420137, at *8 (N.D. Ill. Oct. 24, 2014), as support for his position that expenditure of time and money incident to a debt collection effort suffices as damages under ICFA, any damages that he incurred, in this Court's view, do not constitute actual damages under ICFA. This is particularly so as Price, in his Complaint, only alleges that he expended such time and incurred such costs when consulting with his attorneys. (Dkt. No. 1 at ¶ 32.) Such a claim is insufficient to allege to actual harm, particularly as attorney's fees are reimbursed pursuant to a different part of the statute and the because Court declines to read the actual damages prong so broadly as to allow for the requirement to be met simply by a plaintiff's spending time consulting with his attorney. *See, e.g., Armbrister v. Pushpin Holdings, LLC*, 896 F. Supp. 2d 746, 756 (N.D. Ill. 2012) (finding that actual damages requirement was not met even though plaintiff alleged that he suffered harm through time and money spent defending lawsuit.); *Garcia*, 2014 WL 5543885, at

*2 ("it is clear that Garcia must allege more than just pecuniary losses relating to meetings he had with his attorneys. Accordingly, his ICFA claim must be dismissed.").

As such, the Court grants Seterus's motion to dismiss Count III.

## **CONCLUSION**

For the reasons set forth above, Seterus's Motion to Dismiss is granted with relation to the § 1692(g) claim in Count I with prejudice and the entirety of Counts II and III without prejudice. The Motion is denied as it relates to the remainder of Count I. (Dkt. No. 13.)

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 4/8/2016